### SCHWERDTFEGER v. AMERICAN UNITED LIFE INS. CO. et al.
### No. 10563.

Circuit Court of Appeals, Sixth Circuit.

Feb. 5, 1948.

Vernon E. Weygandt, of Akron, Ohio (Meade, Weygandt, Held & Leonard, Vernon Weygandt and Roy B. Meade, all of Akron, Ohio, on the brief), for appellant.

Ernest L. Cunningham, of Akron, Ohio (Amer, Cunningham & Keeney, By Ernest L. Cunningham, all of Akron, Ohio, on the brief), for appellees.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Roland Schwerdtfeger, a resident of the State of Ohio, in November, 1939, took out a policy of insurance on his life with the American United Life Insurance Company, in which it was provided that in case of his death, the proceeds were payable to whomever he should designate as beneficiary. As originally issued, the beneficiary named in the policy was his wife, Lucille Schwerdtfeger. About five weeks before he died, on January 30, 1946, he signed, according to appellees, an application directing the insurance company to change the beneficiary named in the policy by making it payable to his daughters, Anna and Helen. This application for change of beneficiary was not delivered to the insurance company until after Mr. Schwerdtfeger's death. When a dispute arose between the parties, the insurance company filed a petition of interpleader to determine who was entitled to the proceeds, and paid the money in to court. The daughters were then substituted as parties plaintiff and the widow, defendant. The widow attacked the claim of the daughters to the proceeds of the policy on the ground that the insured did not sign or execute the application for change of beneficiary, and that the claimed signature to the document was not genuine. Further, she claimed the deceased was mentally incompetent at the time the alleged change of beneficiary was made; and, finally, she challenged the change of beneficiary on the ground that it was void and of no effect, because it was not executed in accordance with the terms and provisions of the policy.

The case was tried before the district court, which filed an opinion and entered findings of fact and conclusions of law. The court found that the signature to the application for change of beneficiary was the genuine signature of the insured, and that he was mentally competent when he signed the application. On the question of law, the court held that provisions in a policy regarding change of beneficiary are for the benefit of the insurance company and may be waived by it; and that when the company filed its petition for interpleader in this case, it thereby waived any technical requirements in the policy. A judgment was thereupon entered determining that the daughters were entitled to the proceeds of the insurance policy.

Whether the insured's signature was genuine, and whether he was mentally competent at the time of the application for change of beneficiary, were questions of fact for the determination of the trial court. The sister of the insured, and his nurse, testified that they saw him sign his name to the application in question. Thompson, a close business friend of the insured and the agent from whom he had purchased the policy, and who had many business transactions with him during the ten years before his death, had seen the insured's signature on numerous occasions —at the time of signing contracts to purchase real estate, making of loans, applications for insurance, and on checks for the payments of insurance policies. He testified that there was no doubt in his mind that the signature to the application for the change of beneficiary was the genuine signature of the insured. As against this evidence, defendant submitted the testimony of a handwriting expert, who gave, as his opinion, that the signature was not genuine, basing his opinion on variations from admittedly genuine signatures.

With regard to the insured's mental competency at the time of application for change of beneficiary, the insured's physician, the attending nurse, and the sister of the insured testified that he seemed entirely

normal during the period in which the application was signed and not only knew about his business affairs but fully realized the extent of his property and discussed how he wanted the family to share what he had. In their opinion, he was mentally competent at the time he signed the application. Evidence to the contrary was not in the least persuasive. The findings of the district court that the signature in question was genuine and that the insured was mentally competent at the time he signed the application were sustained by substantial evidence, and we find no error therein.

Appellant contends that the delivery, after the insured's death, of the application to change the beneficiary in the policy of insurance, violated the terms of the policy, and was insufficient to effect such change.

The language of the policy, in question, with regard to change of beneficiary, provides: "If the interest of the beneficiary has vested in the insured or if the right to change beneficiary has been reserved, the insured, by written notice to the Company at its Home Office at any time while this policy is in force, may change the beneficiary under this policy, such change to be subject to the rights of any previous assignee and to become effective only when a provision to that effect is endorsed hereon by the Company, whereupon all rights of the former beneficiary shall cease."

█ The circumstances surrounding the change of beneficiary are as follows: The insured had purchased the policy through Thompson, as agent, in 1939, and pledged it as collateral security for a mortgage loan. When the loan was paid in 1944, the policy was returned to the insured, and kept in his safe. At his request, his sister sent it on to Thompson about December 1, 1945, for the purpose of changing the beneficiary. On December 26th, Thompson sent the sister a blank for change of beneficiary, which she took to the insured's home where he was confined with illness. He instructed her how he wanted it filled out and she typed the names of his daughters in the proper places as the new beneficiaries. He then signed it in her presence and that of his nurse. The application was not delivered to Thompson or to the insurance company until after the insured's death on January 30, 1946. In the foregoing, we accept the testimony supporting the findings and judgment of the district court, as is necessary, where such findings are supported by substantial evidence, and are not clearly erroneous.

█ It is appellant's claim that her right as beneficiary became vested upon the death of the insured and that, thereafter, neither the insurance company nor any one else could do anything to modify the policy as it then stood.* Questions similar to this have given rise to endless legal speculation and innumerable conflicting adjudications. But the Supreme Court of Ohio, whose decisions are here controlling, has, in our opinion, clearly determined the point in issue in Arnold v. Newcomb, 104 Ohio St. 578, 136 N.E. 206, and Atkinson v. Metropolitan Life Insurance Co., 114 Ohio St. 109, 150 N.E. 748. According to these adjudications, appellant had no vested right in the policy at the time of the insured's death and prior to the receipt by the insurance company of the application to change the beneficiary; the provisions regulating the mode and manner of making a change of beneficiary are for the benefit of the insurance company and may be waived by it; and the intention of the insured, as evidenced by his application for a change of beneficiary, is given effect.

In accordance with the foregoing, the judgment of the district court is affirmed.

---

* See discussion respecting change of beneficiary in 60 Harvard Law Review, page 1349.