FELTON et al., Appellants,

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellee.

[Cite as *Felton v. Nationwide Mut. Fire Ins. Co.*, 163 Ohio App.3d 436, 2005-Ohio-4792.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 22518.

Decided Sept. 14, 2005.

Thomas A. Skidmore, for appellants.

James A. Sennett and Phillip C. Kosla, for appellee.

WHITMORE, Judge.

{¶ 1} Plaintiffs-appellants, Patricia M. Felton and others, have appealed the decision of the Summit County Court of Common Pleas that granted summary judgment in favor of the defendant-appellee, Nationwide Mutual Fire Insurance Company ("Nationwide"). This court affirms.

I

{¶ 2} The facts of this case are undisputed. In early August of 1999, Salvador and Trina Duluc visited the Dominican Republic and requested that their son, Thomas, watch over their home and care for their pets during their absence. Thomas agreed. With their permission, Thomas set up temporary residence at the Dulucs' home during the duration of his parents' stay in the Dominican Republic.

{¶ 3} On August 7, 1999, Felton was walking her dog in the neighborhood surrounding her home at 778 Inverness Road in Fairlawn, Ohio. While walking past the Duluc residence, located at 534 West Fairlawn Boulevard in Fairlawn, Ohio, Felton was attacked by a dog owned by the Dulucs' son, Thomas. Felton sustained permanent injuries.

{¶ 4} It is undisputed by the parties, and conceded by Thomas, that on August 7, 1999, he lived in a house located at 681 Gardendale Avenue in Akron, Ohio. According to the facts before the trial court, Thomas did not pay rent to his parents during his stay at their home. Nor did he change his mailing address; Thomas continued to receive his mail at the Gardendale Avenue address. Additionally, the utilities at the Gardendale Avenue address were in Thomas's name. Furthermore, Thomas's voter registration identifies his sole residence as 681 Gardendale Avenue, Akron, Ohio. Lastly, during his period of temporary residence at the Duluc home, Thomas intended to return to the Gardendale Avenue address upon his parents' return from the Dominican Republic and in fact did so.

{¶ 5} At the time of the incident, the Dulucs had in effect a homeowners insurance policy obtained through Nationwide covering the property known as 534 West Fairlawn Boulevard, Fairlawn, Ohio, 44313. The policy had been in effect since July 3, 1997.

{¶ 6} On January 11, 2000, Felton filed a complaint against the Dulucs and Thomas for personal injuries resulting from the dog bite. The matter went to trial, wherein a jury found in favor of Felton and against Thomas in the amount of $35,000. The Summit County Court of Common Pleas entered a judgment reflecting the jury verdict on October 18, 2002.

{¶ 7} Subsequently, Felton requested that Nationwide satisfy the October 18, 2002 verdict under the terms of the Dulucs' homeowners insurance policy. Nationwide refused coverage. The matter ultimately came before the Summit County Court of Common Pleas upon the supplemental complaint and counterclaim of the parties, each seeking a judicial declaration as to whether Thomas was an insured under the homeowners insurance policy issued by Nationwide to the named insureds, Salvador and Trina Duluc.

{¶ 8} Both parties requested summary judgment based upon their respective claims, and on January 18, 2005, the trial court granted summary judgment against Felton and in favor of Nationwide. The court also declared that Thomas was not, and never had been, an insured under the Dulucs' Nationwide homeowners insurance policy.

{¶ 9} Felton has timely appealed the decision of the Court of Common Pleas, asserting one assignment of error.

## II

### Assignment of Error

The lower court erred by failing to find that Thomas Duluc was an "insured" under his parents' homeowners policy because he is a "relative," who, at the time of the dog bite was "living" at his parents' home and was "legally responsible" for their animals and property.

{¶ 10} In her sole assignment of error, Felton has argued that the trial court erred when it declared that Thomas was not an insured under the terms of the Dulucs' Nationwide homeowners policy. Specifically, Felton has argued that Thomas was an insured because at the time of the incident, he was a relative living at his parents' home and alternatively, he was legally responsible for their property and animals while the Dulucs were in the Dominican Republic. We disagree.

{¶ 11} This court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. This court views the facts presented by the moving party in a light most favorable to the nonmoving party and resolves any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378, certiorari denied, *Stowe-Woodward Co. v. Viock* (1986), 479 U.S. 948, 107 S.Ct. 433, 93 L.Ed.2d 383.

{¶ 12} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated;

(2) the moving party is entitled to judgment as a matter of law; and

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 13} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. "Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings." *Elsass v. Crockett,* 9th Dist. No. 22282, 2005-Ohio-2142, 2005 WL 1026700, ¶ 15. Rather, the nonmoving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a genuine triable issue exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 449, 663 N.E.2d 639.

{¶ 14} With these principles in mind, we next consider whether Thomas Duluc was an insured under the Nationwide policy at the time Felton was attacked by his dog on August 7, 1999.

{¶ 15} The interpretation of an insurance contract is a matter of law. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. When interpreting an insurance contract, it is incumbent upon this court to "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11. As Felton points out, it is axiomatic that a policy will be construed liberally in favor of the insured and strictly against the insurer where the provisions at issue are reasonably susceptible of more than one interpretation. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380.

{¶ 16} Felton has argued that such a strict interpretation should be used in the instant case because the policy's definition of "insured"—"liv[ing] in [the policyholder's] household"—could reasonably be interpreted to include one who is temporarily staying at the insured premises. We find two flaws in this argument.

{¶ 17} First, it is well established that a plaintiff who is not a party to the contract of insurance is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party. See *Cook v. Kozell* (1964), 176 Ohio St. 332, 336, 27 O.O.2d 275, 199 N.E.2d 566; *Boxler v. Allstate Ins. Co.* (February 27, 1991), 9th Dist. No. 14752, at 7, 1991 WL 24960. Because Felton is not a party to the contract of insurance at issue, it is improper for her to now urge this court to strictly interpret the language of the policy against Nationwide.

{¶ 18} Second, the language at issue in the policy is not reasonably susceptible of more than one interpretation. While the rule of strict interpreta-

tion is a fundamental principle in insurance law, it is tempered by other canons of construction that seek to bring balance and reason to the analysis. For instance, this court has held that a contract "should be construed reasonably, so as not to arrive at absurd results." *Budai v. Euclid Spiral Paper Tube Corp.* (January 22, 1997), 9th Dist. No. 96CA0046, at 21–22, 1997 WL 28111, citing *Cincinnati v. Cameron* (1878), 33 Ohio St. 336, 364. Furthermore, a contract for insurance "must be given a fair and reasonable interpretation to cover the risks anticipated by the parties." *Boxler*, 9th Dist. No. 14752, at 7, 1991 WL 24960.

{¶ 19} Additionally, it is clear that where common words appear in a written instrument, they will be given their ordinary meaning unless "manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 245–246, 7 O.O.3d 403, 374 N.E.2d 146.

{¶ 20} In the present case, an "insured" under the policy is defined in part as the policyholder and any relatives who *live in* the policyholder's household. This definition is in direct conflict with Felton's repeated assertions that Thomas "was living *at* his parents' household." This is a minor distinction, but we think an important one. Common sense, reason, and fairness dictate that "living at" the parents' house is not the same as "living in" the parents' household.

{¶ 21} Furthermore, because "household" is not defined in the insurance contract, the term must be given its common, ordinary, usual meaning, absent an absurd result. See *Shear v. West American Ins. Co.* (1984), 11 Ohio St.3d 162, 166, 11 OBR 478, 464 N.E.2d 545; *Alexander*, 53 Ohio St.2d at 245–246, 7 O.O.3d 403, 374 N.E.2d 146. In *Shear*, the Ohio Supreme Court, while interpreting an insurance contract, approved the Webster's Dictionary definition of "household" as "those who dwell under the same roof and compose a family" or a "social unit comprised of those living together in the same dwelling place." *Shear*, 11 Ohio St.3d at 166, 11 OBR 478, 464 N.E.2d 545.

{¶ 22} Therefore, if we read the Nationwide insurance policy through the lens of *Shear*, an insured is defined as a relative who dwells under the same roof, composing a family or living as a social unit comprised of those living together in the same dwelling place. This court finds that Nationwide has satisfied its evidentiary burden under the summary-judgment standard and that reasonable minds can come to but one conclusion.

{¶ 23} It is well documented in the record that Thomas's stay at his parents' home was only temporary. He maintained his own home at 681 Gardendale Avenue, Akron, Ohio. Thomas intended to return to his home at the end of his parents' vacation and in fact did so. Most notably, Thomas did not dwell under the same roof as his parents and it is clear that Thomas and his parents did not

live together in the same dwelling place. Contrary to Felton's assertions, Thomas did` not "move into" his parents' home, based on common and ordinary usage of the term. This court finds that Thomas was temporarily house-sitting, and interpreting the Nationwide policy to include him as an insured living in his parents' household would be an absurd result.

 {¶ 24} Felton has also argued that Thomas is an insured under the Nationwide policy because he was legally responsible for the covered animals at his parents' house. However, this argument fails. A diligent reading of the definition reveals that the animal must be owned by an insured. Because Thomas owned the dog that bit Felton and because he is not an insured, this alternative definition of "insured" is inapplicable in the instant case.

{¶ 25} This court finds that under a fair and reasonable interpretation of the insurance contract, Thomas was not an insured under his parents' Nationwide policy at the time of the dog bite.

{¶ 26} Based on the foregoing, Felton's sole assignment of error is without merit.

### III

{¶ 27} Felton's sole assignment of error is overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

SLABY, P.J., and BATCHELDER, J., concur.